IN THE UNITED STATES DISTRCIT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

ALLEN F. BIALEK                                          Case No.  2:09-CV-10208

                                                                                         Hon. SEAN F. COX

     Plaintiff,

v.

AMERICAN COLOR GRAPHICS, INC.
d/b/a VERTIS COMMUNICATIONS, a New York
Corporation, and VERTIS, INC, a Delaware Corporation
Defendants.

---

### FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff Allen F. Bialek, by and through his attorneys, **Asker Perlmuter, PLC.,** and for his First Amended Complaint against Defendants American Color Graphics, Inc d/b/a/Vertis Communications and Vertis, Inc. states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    This is an action for, *inter alia*, age discrimination pursuant to the Age Discrimination in Employment Act, 29 USC § 621 *et seq.*

2.    Plaintiff Allen F. Bialek ("Plaintiff" or "Bialek") is a resident of the State of Michigan, County of Oakland.

3.    Defendant American Color Graphics, Inc (õACGö) is a New York corporation, transacting and conducting business in the State of Michigan.

4.    Defendant ACG d/b/a Defendant Vertis Communications is a New York corporation, transacting and conducting business in the State of Michigan.

1

5. Defendants Vertis, Inc. ("Vertis") is a Delaware corporation, transacting and conducting business in the State of Michigan.

6. Defendant Vertis d/b/a/ Defendant Vertis Communications ("Vertis Communications") is a Delaware corporation, transacting and conducting business in the State of Michigan.

7. Jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

8. Plaintiff was born on July 12, 1946.

**9.** Bialek has been on exemplary employee with Vertis and/or ACG and their predecessors in interest for more than 43 years (collectively, "Defendants").

10. Plaintiff began his employment with Defendants on June 1, 1965, working in the production department.

11. Plaintiff continued to work in the production department until 1989, at which time he became involved in sales.

12. On or about October 20, 2008, Vertis, merged with ACG (the "Merger").

13. Vertis was the survivor of said Merger.

14. After the Merger, Vertis became Plaintiff's employer.

15. After the Merger, ACG became Plaintiff's employer.

16. After the Merger, Vertis Communications became Plaintiff's employer.

17. After the Merger, all Defendants jointly employed Plaintiff.

18.     Plaintiff met or exceeded Defendants' employment expectations at all times during his employment.

19.     At the time of his termination, Plaintiff held the position of Executive Account Representative.

20.     During his employment, Plaintiff was one of Defendants' top sellers, and regularly received awards and performance-based bonuses.

21.     Plaintiff's work performance was always satisfactory.

22.     Shortly after the Merger, Plaintiff's supervisors began treating him in a very discriminatory manner.

## DISCRIMINATION

23.     Plaintiff incorporates all previous paragraphs by reference.

24.     Shortly after the Merger took place, Defendants began threatening Plaintiff with a loss of medical insurance coverage and pension benefits under his benefits plan (the "Plan") if he were to refuse to accept an "early retirement."

25.     Defendants threatened that Plaintiff would lose his job if he were to not take the "early retirement" option.

26.     In fact, Plaintiff was informed that he would have to notify Defendants of his decision on whether to accept the "early retirement" option before December 1, 2008, if he wished to avoid the loss of coverage and pension benefits under the existing Plan.

27.     Defendants failed to provide any specific details of the threatened lost benefits Plaintiff would suffer if he were to refuse the "early retirement" option.

28.     Defendants refused to provide Plaintiff with written information regarding the alleged changes to the Plan.

29.     Defendants' failure to provide Plaintiff with proper notice violated legal duties owed by Defendants to Plaintiff.

30.     Additionally, Defendants failed to provide Plaintiff with any specific details relating to the "early retirement" option package and its benefits, instead Defendants repeatedly stated only that it was much better for him to take.

31.     Around this same time, Defendants made comments to Plaintiff referring to his inability as an "older guy" to adapt to Defendants Vertis' modern operating procedures.

32.     Defendants made comments to Plaintiff regarding its belief that he could not keep up with the "younger" employees as it related to issues of newer technology.

33.     Defendants informed Plaintiff that "older guys" like Plaintiff would have a hard time fitting in to the new corporate culture of the entity surviving the Merger.

34.     Defendants continued to harangue Plaintiff regarding his opportunities to take early retirement, consistently referring to the fact that Plaintiff was "too old" to continue working with Defendants under the new changes.

35.     Defendants failed to train Plaintiff under the new operating procedures, despite providing training to all other, younger employees after the Merger.

36.     Defendants intentionally excluded Plaintiff from the "kick-off" events and seminars upon Vertis' takeover after the Merger, often inviting everyone in the sales department except Plaintiff.

4

37. Defendants held training meetings and sales conventions in order to introduce Defendants' employees to the changes in Vertis' organizational and operating structure, however, Plaintiff was intentionally excluded from those meetings and conventions.

38. Defendants utterly failed to provide Plaintiff with the necessary administrative updates and upgrades after the Merger was complete, rendering Plaintiff completely unable to participate in Defendants' system, including, by example and not limitation, failing to provide Plaintiff with a Vertis email address after the Merger took place.

39. Defendants implied that if Plaintiff did not take "early retirement" by December 1, 2008, he would be terminated, and would thus forego the benefits offered if he accepted a "voluntary" retirement.

40. Defendants' conduct, as described above, was designed solely to create an unworkable situation in a direct effort by Defendants to force Plaintiff into early retirement or termination.

41. Defendants created a work environment so charged with discrimination that Plaintiff was left with no other option than to disengage himself from the intolerable conditions and resign from his position with Defendants.

42. The conditions created by Defendants were so intolerable that Plaintiff's only reasonable option to escape the discrimination was to resign.

43. In essence, Defendants forced Plaintiff to choose between a layoff without meaningful opportunity to earn income or taking early retirement, which amounted to a constructive discharge.

44. Defendants' conduct, as explained above, constitutes a constructive discharge of Plaintiff by Defendants.

45. Plaintiff was terminated by Defendants when he was 62 years of age after more than 43 years of service and an exemplary employment history.

## COUNT I- VIOLATION OF ELLIOT-LARSEN CIVIL RIGHTS ACT

46. Plaintiff incorporates all previous paragraphs by reference.

47. At all material times, Plaintiff was an employee, and Defendants was his employer, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2102 *et seq.*

48. Plaintiff's age was at least one factor that made a difference in Defendants' decision to terminate Plaintiff from his position as Executive Account Representative.

49. Had Plaintiff been a younger person, he would not have been terminated.

50. Had Plaintiff been a younger person, he would have been treated better in the terms and conditions of his employment by Defendants.

51. Defendants, through their agents, representatives, and employees, were predisposed to discriminate on the basis of age, and acted in accordance with that predisposition.

52. Defendants, through their agents, representatives and employees, treated Plaintiff differently from similarly-situated younger employees in the terms and conditions of employment, based on unlawful consideration of age.

53. Defendants' actions evidenced an intentional disregard for Plaintiff's rights and sensibilities.

54.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings and earning capacity; loss of career opportunities, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue his gainful occupation of choice.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against Defendants as follows:

a)   compensatory damages;

b)   exemplary damages;

c)   an award of lost wages and the value of fringe benefits, past and future;

d)   an award of interest, costs, and reasonable attorney fees;

e)   an order enjoining Defendants, its agents, representatives, and employees from further acts of discrimination or retaliation;

f)   an order reinstating Plaintiff to the position he would have held if Defendants had not discriminated; and

g)   an order awarding whatever other equitable relief appears appropriate at the time of final judgment;

## COUNT II-
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

55.     Plaintiff incorporates all previous paragraphs by reference.

56.     Plaintiff filed a charge against Defendants with the Equal Employment Opportunity Commission ("EEOC"), describing the aforementioned illegal conduct by Defendants.

57. On May 11, 2008, Plaintiff obtained a Right to Sue letter from the EEOC. See Right to Sue letter, attached hereto as **Exhibit A**.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against Defendants as follows:

   a) compensatory damages;

   b) exemplary damages;

   c) an award of lost wages and the value of fringe benefits, past and future;

   d) an award of interest, costs, and reasonable attorney fees;

   e) an order enjoining Defendants, its agents, representatives, and employees from further acts of discrimination or retaliation;

   f) an order reinstating Plaintiff to the position he would have held if Defendants had not discriminated; and,

   g) an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully Submitted,

**ASKER PERLMUTER, PLC**


By:_/s/ Paul P. Asker_____
   **PAUL P. ASKER (P45098)**
   **JILL A. TUCKER (P66839)**
   Attorneys for Plaintiff
   32000 Northwestern Hwy, Ste 275
   Farmington Hills, MI  48334
   (248) 419-5400

**DATED**:  May 28, 2009

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Allen F. Bialek and hereby demands a jury trial of all the issues in this case.

        Respectfully Submitted,

        **ASKER PERLMUTER, PLC**

        By: /s/ Paul P. Asker
           **PAUL P. ASKER (P45098)**
           **JILL A. TUCKER (P66839)**
           Attorneys for Plaintiff
           32000 Northwestern Hwy, Ste 275
           Farmington Hills, MI  48334
           (248) 419-5400

**DATED**:  May 28, 2009

**PROOF OF SERVICE**

I hereby certify that on this 28th day of May, 2009, a complete copy of Plaintiff's First Amended Complaint, Demand for Trial by Jury and this Proof of Service were served upon John A. Borell, Jr. by mailing the same to him at Marshall & Melhorn LLC, 4 Seagate, 8th Floor, Toledo, OH 43604, with first class postage fully prepaid thereon. The statement above is true to the best of my knowledge and belief.

/s/ Christine J. Trinh_____
CHRISTINE J. TRINH